

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAMELA LYNN BROWN,
  Plaintiff,
v.

CIVIL NO. 09-3747

MICHAEL J. ASTRUE, Commissioner
of Social Security,
  Defendant.

**FILED**
NOV 04 2010
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## MEMORANDUM OPINION & ORDER

RUFE, J.                            November 4, 2010

Plaintiff Pamela Brown ("Plaintiff") requests review of the final decision of the Commissioner of the Social Security Administration, Michael J. Astrue ("Commissioner"), denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83f.[1] Specifically, Plaintiff moves for reversal of the Commissioner's decision, or in the alternative, remand. Defendant argues that the administrative law judge's determination was supported by substantial evidence and should be upheld. This Court referred the matter to Magistrate Judge Thomas J. Rueter for a Report and Recommendation.[2] In a report submitted on April 27, 2010, Magistrate Judge Rueter recommended that the Court affirm the final decision of the Commissioner. Plaintiff timely objected, and the matter is now ready for decision. For the reasons that follow, and after careful review of the entire record, the parties' submissions, and the applicable law, the Court

---

[1] 42 U.S.C. §§ 405(g) and 1383(c)(3).

[2] See Local Rule of Civil Procedure 72.1.1(a), 28 U.S.C. § 636(b)(1)(B).

will affirm the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff was born in 1961, and is currently forty-nine-years-old. She applied for DIB and SSI benefits on December 27, 2004, claiming a disability onset date of December 31, 2002.[3] Her date last insured was March 31, 2003.[4] Her claimed impairments include cervical strain and sprain, cervical nerve lesions, bilateral carpal tunnel syndrome, major depressive disorder, gastroesophageal reflux disease, and chronic lower abdominal pain.[5] After her application was denied at the initial-review level on June 16, 2005, Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was granted.[6] ALJ Janice C. Volkman held a hearing on July 19, 2006.[7] On July 25, 2006, the ALJ ruled that Plaintiff was not disabled and thus denied her claims.[8] The Appeals Council denied Plaintiff's request for review. Plaintiff filed an appeal in federal court on June 27, 2007.[9] That case resulted in remand for further administrative proceedings. Following the remand, ALJ Volkman held a second hearing on June 23, 2008,[10] and issued another decision unfavorable to Plaintiff on July 10, 2008.[11] Plaintiff then initiated the present

---

[3] R. 81.

[4] R. 81.

[5] See R. 73-80 and hearing testimony.

[6] R. 30.

[7] R. 30.

[8] R. 19-29.

[9] Civil Action No. 07-2681.

[10] R. 254.

[11] R. 242-253.

2

action on August 17, 2009.

## II. STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[12] The court's review of legal issues is plenary, but its factual review is limited.[13] The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[14] For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] It is more than a mere scintilla, but requires less than a preponderance of the evidence.[16] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[17]

A district court must review *de novo* those portions of a magistrate judge's Report and Recommendation to which a party has objected.[18] A court may in its discretion "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[19]

---

[12] 42 U.S.C. § 405(g).

[13] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[14] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[15] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[16] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[17] Fargnoli, 247 F.3d at 38.

[18] 28 U.S.C. § 636(b)(1)(c).

[19] Id.

3

## III. DISCUSSION

### A. *Social Security Law*

In order to qualify for SSI or DIB benefits, a person must be found to have a "disability." Under the relevant provisions of the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[20] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether a disability exists.[21] At step one, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied. If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step two whether the applicant suffers from a severe, medically determinable impairment which significantly limits her ability to work. If the applicant has such an impairment, the ALJ must determine at step three whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1 ("the Listings"),[22] or has an equivalently debilitating medical condition. If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step four whether the applicant has the Residual Functioning Capacity ("RFC") to

---

[20] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). "Disability" is defined identically in Title II and Title XVI of the Social Security Act, governing DIB and SSI benefits, respectively. Id.; see also Barnhart v. Thomas, 540 U.S. 20, 23-24 (2003).

[21] Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

[22] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

4

perform her former relevant work. If the applicant does not have the RFC to perform her previous work, the Commissioner must establish at step five that the applicant has the RFC to perform other work that exists in the national economy, considering her age, education and work experience. At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work, the ALJ must find the applicant to be disabled.

### B. *The Decision of the ALJ*

On July 10, 2008, the ALJ denied Plaintiff's disability claim.[23] In making her decision, the ALJ considered documentary evidence, Plaintiff's testimony, and the testimony of independent vocational expert, Gary Young, and impartial medical expert Maurice Prout, Ph.D.[24] The ALJ found that most of Plaintiff's declared symptoms and restrictions were not supported by medical evidence, she had not been prescribed medication for severe pain, her testimony was not completely credible, and the functional limitations listed by Dr. Marks, the consultative examiner, were not supported by Dr. Marks's own examination of the Plaintiff, which was "almost completely normal."[25] The ALJ then applied the five-step process as required by the Regulations, and found, in relevant part: (1) Plaintiff had "probably not engaged in substantial gainful activity since December 31, 2002, the alleged onset date," although she engaged in occasional work as a housekeeper or dishwasher;[26] (2) Plaintiff suffered from cervical spine impairment and right carpal tunnel syndrome,

---

[23] R. 242-253.

[24] R. 245.

[25] R. 252-253.

[26] R. 248.

5

which are severe impairments under the Social Security regulations.[27] After hearing expert testimony and reviewing both Plaintiff's testimony and the record evidence, the ALJ found no evidence that Plaintiff's depression was severe or caused functional limitations;[28] (3) Plaintiff's impairments did not meet or equal any impairments found in the Listings;[29] (4) Plaintiff was able to perform her past relevant work as a housekeeper, despite her functional limitations; (5) Plaintiff had the RFC to perform light work which does not require frequent fingering,[30] and such jobs exist in significant numbers both in the national economy and locally, per the testimony of the vocational expert. As a result, the ALJ found that Plaintiff was not "disabled" as defined by the Social Security Act.

C. *The Report & Recommendation*[31]

After reviewing the Record, Magistrate Judge Rueter produced a thorough Report and Recommendation ("R & R"), in which he recommended that the Court affirm the final decision of the Commissioner. Specifically, Magistrate Judge Rueter found that substantial evidence supported the ALJ's assessment of Plaintiff's RFC and the ALJ's determination that Plaintiff could, despite the limitations caused by her impairments, perform light work that did not

---

[27] The ALJ found no medical confirmation of Plaintiff's claim that she suffered from multiple sclerosis or hearing loss. She also found that Plaintiff's claimed gastrointestinal complaints, anemia, lower back pain, knee pain, and depression were not severe, even in combination. R. 248-51.

[28] The ALJ agreed with the independent medical consultant's assessment that Plaintiff's depression was a non-severe impairment *which did not cause any functional limitations*. R. 251. Upon review of the evidence, ALJ found that Plaintiff remained active and engaged in activities of daily living (cleaning, shopping, cooking, paying bills, doing laundry and ironing, and traveling on public transportation), engaged socially with her boyfriend, children, and friends, presented no evidence of limitations with concentration, persistence or pace, and had no episodes of decompensation. R. 251.

[29] R. 251.

[30] R. 251.

[31] Doc. No. 16.

6

require frequent fingering, as well as her prior relevant work as a housekeeper.[32] Magistrate Judge Rueter also found that substantial evidence supported the ALJ's evaluation of the medical opinions of consulting Doctors Marks and Zaydon, and her failure to incorporate their medical opinions regarding Plaintiff's exertional and functional limitations into the ALJ's RFC analysis and hypothetical questions posed to the vocational expert ("VE").[33] Magistrate Judge Rueter also concluded that the ALJ's findings that Plaintiff's mental impairment was mild and did not cause any work-related limitations were supported by substantial evidence, including the testimony of a medical expert at the hearing and Plaintiff's own testimony.[34] Finally, Magistrate Judge Rueter determined that the ALJ properly determined that Plaintiff's testimony regarding her subjective complaints was not fully credible, because contradictory evidence exists in the record.[35]

### D. *Plaintiff's Objections*[36]

Plaintiff timely objected on four grounds. This Court has conducted a *de novo* review of each issue, and will now address each objection in turn.

1. First objection: Plaintiff argues that the ALJ erred in rejecting medical opinion evidence and Plaintiff's testimony without adequate explanation.

Plaintiff challenges the ALJ's rejection of the functional limitations about which consulting doctor Barry Marks, D.O., opined, and states that both Defendant and the Magistrate

---

[32] R & R 11-19.

[33] R & R 19-22.

[34] R & R 22-25.

[35] R & R 25-26.

[36] Doc. No. 17.

7

Judge failed to address Plaintiff's challenge on this point. The Court disagrees, and finds that the ALJ adequately explained her rejection of Dr. Marks's opinion that Plaintiff could not sit, stand, or walk for an entire eight-hour work day when the ALJ stated that it was not supported by either the nearly normal findings of Dr. Marks's own physical examination[37] or the medical records more generally. The Court finds that this is a reasonable explanation for why the ALJ rejected evidence favorable to Plaintiff's claim, and further finds that the magistrate judge properly addressed this challenge in his R & R.[38]

Similarly, Plaintiff argues that the ALJ did not adequately explain why she rejected some aspects of Plaintiff's testimony. The Court disagrees. Although the ALJ did reject some of Plaintiff's testimony regarding her pain and other symptoms, the ALJ explained that she did so where the claimed symptoms did not seem credible in light of the evidence as a whole.[39] She then outlined the evidence she relied upon, which included Plaintiff's own documentation of her activities.

Plaintiff also claims that the ALJ failed to include functional limitations identified by non-examining, consulting doctor Anne C. Zaydon, M.D., and further claims that the R & R improperly provided a rationale for this omission where the ALJ did not. Dr. Zaydon opined that

---

[37] Dr. Marks's examination revealed normal gait, intact motor strength and sensation, no muscle atrophy, no neuropathy, no edema in the legs or arms, and close to normal range of motion in the cervical spine and lumbar spine, none of which indicated that Plaintiff would be incapable of sitting, standing or walking for eight hours per day. The ALJ considered these medical findings, rather than Dr. Marks's opinion, because the ALJ found Dr. Marks's opinion was not well supported by the doctor's own medical findings. Dr. Marks's medical findings regarding Plaintiffs hand and wrist (reduced grip strength, slightly reduced range of motion in the right hand and thumb, and reduced range of motion in her left and right distal interphalangeal joints (the joint for the finger tip) were also considered by the ALJ when she determined Plaintiff's residual functional capacity.

[38] R & R 19-21.

[39] R. 252.

8

Plaintiff retained the ability to do work that required only occasional (less than one-third of the time) kneeling, crouching and crawling, yet the ALJ did not include this limitation in her analysis of Plaintiff's RFC or her hypotheticals to the VE.

In his R & R, the Magistrate Judge reasons that because the ALJ found that Plaintiff's lower back and knee injuries were non-severe, the ALJ did not have to consider related limitations in determining RFC. This is an incorrect statement of the law. Functional limitations caused by *all impairments*, whether found to be severe or non-severe at step two, must be taken into consideration at steps three, four and five of the sequential evaluation.[40] However, in this case the ALJ thoroughly reviewed the medical evidence regarding Plaintiff's complaints of knee pain. That evidence indicated that the pain in her knees was resolved within a few months. Plaintiff did not testify about pain or limitations due to knee pain at either ALJ hearing. Although the Court agrees that the ALJ appears to have rejected Dr. Zaydon's opinion about limitations in kneeling, crouching and crawling when she found that Plaintiff could do her prior relevant work as a housekeeper, and did not *explicitly* provide an explanation for doing so, the Court finds that any error was harmless. None of the jobs the VE listed as possible vocations for Plaintiff at step five of the sequential evaluation would require more than occasional kneeling, crouching or crawling.[41] Therefore, the Court finds that the ALJ's opinion in this regard was supported by substantial evidence.

Finally, Plaintiff claims that the ALJ improperly rejected certain aspects of

---

[40] 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923; Bailey v. Sullivan, 885 F.2d 52, 59-61 (3d Cir. 1989).

[41] R. 235 (the VE lists cashier, assembly work, and inspector as possible light occupations with a sit/stand option, and assembly work, inspector, and office/clerical work as potential sedentary occupations with a sit/stand option).

9

Plaintiff's testimony regarding her functional limitations. The ALJ noted that in considering Plaintiff's claimed symptoms and limitations, she had to determine whether there is an underlying medical impairment that could reasonably be expected to produce such symptoms. Next, the ALJ must determine whether the testimony is credible by evaluating the claimed intensity and persistence of the alleged symptoms in light of objective medical evidence. The ALJ rejected "most of [Plaintiff's] declared symptoms and restrictions," based on her work history, the abilities she had reported or testified to retaining in past Social Security filings and proceedings, and her medical records (including both objective and objective medical test results and the absence of prescriptions for pain medication for severe pain).[42] The Court finds that the ALJ's reasons for rejecting certain aspects of Plaintiff's claimed symptoms and restrictions were properly made and documented in her opinion.

2. Second objection: Plaintiff argues that the ALJ failed to adequately support her findings related to Plaintiff's mental impairment.

Plaintiff claims that the ALJ improperly relied upon opinion evidence from two non-examining sources, including the medical expert who testified at the hearing, which was inconsistent with the opinions of Plaintiff's treating physicians, who believed she was suffering from depression. The medical documentation Plaintiff provided to the Social Security Administration contains little evidence of diagnosis or treatment for depression. There is evidence of intermittent prescriptions for antidepressant medication, one psychological evaluation completed in October 2006,[43] and the observation of a treating neurologist stating that

---

[42] R. 252-253.

[43] R. 419-30.

Plaintiff seemed profoundly depressed in February 2007. The ALJ also noted that the claimant testified in June 2008 that she had stopped treatment for depression because it had not helped her. The ALJ then looked at Plaintiff's actual functioning in four domains: activities of daily living; social functioning; cognitive functioning (concentration, persistence and pace); and episodes of decompensation. She found, based primarily on Plaintiff's own reported activities and not on the opinions of non-examining sources, that Plaintiff showed no more than mild, if any, deficits in those four domains.

Plaintiff relies heavily upon a single GAF score of 55,[44] noted on her initial treatment plan dated October 11, 2006 from the Wedge Medical Center.[45] While Plaintiff is correct that a GAF of 55 reflects a moderate level of symptoms or moderate impairment in social or occupational functioning, it is a measure of her "current" level of functioning at the time she sought evaluation and provides no information about her general or typical level of functioning. Furthermore, it appears that this number may have been estimated before a complete initial psychiatric evaluation was performed.[46] Therefore, the ALJ did not err in rejecting that single finding and determining, based on other record evidence, that Plaintiff's social and occupational functioning was no more than mildly impaired.

---

[44] The Diagnostic and Statistical Manual of Mental Disorders, 4th Edition recommends that patients be evaluated on five dimensions. The fifth dimension, Axis V, is an assessment of a patients global functioning ("global assessment of functioning" or "GAF") on a scale from zero (in persistent danger of harming oneself or others) to one-hundred (superior functioning across domains). Generally a clinician will assess both the client's current GAF and her highest GAF within the previous year. In this case, only Plaintiff's current GAF, assessed at 55, was recorded in the treatment plan dated October 11, 2006. This is the only legible GAF in the record.

[45] R. 433.

[46] The "short term goal" listed on the Initial Treatment Plan is "Cl. will attend initial psych. evaluation." R. 433. The front page of the evaluation indicates that it was initiated on October 11, 2006, but it was not signed by the evaluating psychiatrist until October 27, 2006. R. 419-432. The Axis V GAF assessment on the evaluation is not legible. R. 427.

11

Plaintiff argues that the ALJ's opinion relies heavily on the fact that Plaintiff had not sought ongoing treatment for her mental illness. The Court sees little, if any, evidence that Plaintiff's lack of treatment was a major factor in the ALJ's conclusions. The Court also disagrees with Plaintiff's assertion that the ALJ relied too heavily on the opinions of two non-treating, independent medical practitioners, Drs. Prout and Perch. Rather, the Court's evaluation of Plaintiff's functioning relies almost entirely on Plaintiff's own reports regarding her activities of daily living, social functioning, and concentration, persistence and pace. Accordingly, the Court finds that the ALJ's findings were supported by substantial evidence.

3. **Third objection: Plaintiff argues that the ALJ's assessment of Plaintiff's Residual Functional Capacity was not properly supported by evidence.**

A claimant's RFC is defined as the most an individual can still do in the workplace despite the physical and mental limitations caused by her impairments.[47] In her third objection, Plaintiff focuses on her physical limitations. She argues that the ALJ did not explicitly identify the medical evidence on which the ALJ's assessment of Plaintiff's RFC was based. She further argues that the R & R improperly provided an explanation that the ALJ herself failed to provide to support her conclusions.

As noted above, the standard of review is whether the record contains adequate evidence to support the commissioner's decision. Here, the R & R summarizes the record evidence in great detail,[48] and finds that the ALJ's RFC determination was supported by the medical evidence, including the records of Plaintiff's treating physicians, as well as Plaintiff's

---

[47] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[48] R & R at 12-16.

testimony and representations regarding her activities, treatment history and limitations.[49]

Upon review of Plaintiff's objections to the R & R and the record as a whole, the Court agrees that the ALJ reviewed the record evidence, including objective medical evidence and Plaintiff's subjective complaints, in determining that Plaintiff was limited to sedentary or light work, and even within those categories was further limited by her inability to engage in frequent fingering (i.e. repetitive work with her hands and fingers). The ALJ did reject the opinion of a *non-examining, non-treating* doctor, who opined that Plaintiff should be limited to only occasional kneeling, crouching or crawling. Notably, the medical findings of Plaintiff's own treating physicians, who generally found that Plaintiff had normal gait, motor power, reflexes, and sensation in her legs, normal range of motion in her knees, normal range of motion in her hips, and normal or slightly decreased range of motion her lower back (lumbar), supported the ALJ's decision to reject that testimony.

The Court adopts the factual summary and the analysis set forth in the R & R on this issue. The ALJ's assessment of Plaintiff's RFC included all limitations which the ALJ found were credibly established,[50] and the Court finds that the ALJ's RFC determination was supported by substantial evidence.

> 4. Fourth objection: Plaintiff argues that the ALJ's exclusion of Plaintiff's psychological limitations in assessing Plaintiff's Residual Functional Capacity was improper.

As noted above, the functional limitations caused by all impairments, whether the impairments are found to be severe or non-severe at step two, must be taken into consideration at

---

[49] R & R at 17.

[50] Rutherford v. Barnhart, 399 F.3d 546, 553-56 (3d Cir. 2005).

13

steps three, four and five of the sequential evaluation.[51] In this case, Plaintiff alleged and provided evidence that she has been diagnosed with depression. While the ALJ categorized Plaintiff's depression as non-severe at step two, any functional limitations due to depression must be considered when determining Plaintiff's residual functional capacity.[52]

The ALJ in this case examined the record evidence and testimony regarding Plaintiff's functioning in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence and pace; and 4) episodes of decompensation. The ALJ summarized the evidence and gave her reasons for finding no more than mild limitations in the first three areas and no episodes of decompensation. Plaintiff put forth no evidence that she had any *work-related functional limitations* stemming from her mental illness, and therefore the ALJ did not err in failing to include such limitations in her assessment of RFC and her hypotheticals for the VE. Indeed, even in her objections Plaintiff does not cite to any credibly established psychological limitations that the ALJ failed to include in her RFC. Therefore, the ALJ did not err in failing to incorporate non-exertional functional limitations in her assessment of Plaintiff's RFC.

## IV. CONCLUSION

For the reasons set forth in the analysis above, Plaintiff's objections are without merit. The Court has found that each of the challenged aspects of the ALJ's decision were supported by substantial evidence. For the foregoing reasons, the Court affirms the decision of the Commissioner.

An appropriate Order follows.

CLERK OF COURT

---

[51] 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923; Bailey, 885 F.2d 59-61.

[52] Id.